IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGOT LOCKWOOD, Individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>CONAGRA FOODS, INC.,<br><br>     Defendant.<br>_____/ | No. C 08-04151 CRB<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs filed this putative class action under California's Unfair Competition Law, Business and Professions Code section 17200. They allege that defendant engages in misleading conduct by advertising its "Healthy Choice" pasta sauce as "all natural" when in fact it includes "high fructose corn syrup." Defendant moves to dismiss on the ground that plaintiffs' claims are expressly preempted by the Nutrition Labeling and Education Act and impliedly preempted by comprehensive Food and Drug Administration ("FDA") regulations under the Federal Food and Drug Cosmetic Act. In the alternative, defendant argues that the Court should defer to the FDA under the "primary jurisdiction" doctrine and should strike the class allegations because plaintiffs cannot prove reliance on a class-wide basis. After carefully considering the parties' papers, including the supplemental briefs submitted after oral argument, defendant's motion is DENIED.

**THE FEDERAL REGULATORY SCHEME**

The Federal Food, Drug, and Cosmetic Act ("FDCA") gives the FDA the responsibility to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority. See e.g., 21 C.F.R. § 101.1 et. seq.. Among other labeling requirements, the FDCA mandates the identification of artificial flavors, 21 U.S.C. § 343(k), and the identification of "imitation" products or ingredients, 21 U.S.C. § 343(c). There is no private right of action under the FDCA, Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 810 (1986); instead, the FDA enforces the FDCA and its regulations through administrative proceedings. See, e.g., 21 C.F.R. § 7.40.

Congress amended the FDCA by enacting the National Labeling and Education Act of 1990 (the "NLEA"). The purpose of the NLEA was to "'clarify and to strengthen [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" National Council for Improved Health v. Shalala, 122 F.3d 878, 880 (11th Cir. 1997) (quoting H.R.Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337). For example, the NLEA requires food and beverage producers to identify serving size, the number of servings per container, the total number of calories, and the amount of certain nutrients such as fat, cholesterol, and sodium. 21 U.S.C. § 343(q)(1)(A)-(D).

The NLEA further amended the FDCA by adding a preemption provision. This provision creates express preemption for state laws that address certain subjects covered by the FDCA, including nutritional labeling requirements added by the NLEA. See 21 U.S.C. § 343-1(a).

**DISCUSSION**

**I.   Preemption**

"Federal preemption can be either express or implied." Chicanos Por la Causa, Inc. v. Napolitano, 544 F.3d 976, 982 (9th Cir. 2008). Defendant argues that plaintiffs' claims are expressly preempted under the NLEA or, in the alternative, are impliedly preempted by the

2

FDCA because Congress intended to occupy the field of food and beverage labeling. Defendant also argues that implied preemption applies because California law conflicts with federal law.

The Court's "inquiry into the scope of a statute's pre-emptive effect is guided by the rule that [t]he purpose of Congress is the ultimate touchstone in every pre-emption case." Altria v. Good, 129 S.Ct. 538, 543 (2008) (internal quotation marks and citations omitted). Courts begin their analysis "'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." Id. (internal quotation marks and citation omitted).

Defendant argues that food labeling is not a field traditionally occupied by the states. Even if defendant is correct, the assumption against preemption still applies, just not with the same force. In any event, the Court concludes that defendant has not proved congressional intent to preempt the claims raised here, even without an assumption against preemption.

*A.    Plaintiffs' claims are not expressly preempted.*

Defendant first asserts that plaintiffs' claims are preempted by the express preemption provisions added by the NLEA. Section 343-1(a) provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce -- . . . (3) any requirement for the labeling of food of the type required by . . . section 343(k) of this title that is not identical to the requirement of such section . . . ." 21 U.S.C.§ 343-1(a)(3). Section 343(k), in turn, provides that food is misbranded "[i]f it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears label stating that fact . . . ." 21 U.S.C. § 343(k). Thus, states may impose labeling requirements for artificial favors, colors or preservatives *only if* such requirements are identical to those imposed by the FDCA; any differences are preempted.

This provision does not apply to plaintiffs' complaint as currently pled. Plaintiffs do not allege that defendant's pasta sauce contains artificial flavoring, coloring or a chemical preservative; rather, they allege that the "high fructose corn syrup" is not produced by a natural process and therefore the pasta sauce is not "all natural." On defendant's motion to dismiss the Court cannot conclude that plaintiffs' claims are preempted by section 343-1(a)(3).

The Court also cannot conclude that plaintiffs' claims as currently pled are expressly preempted by section 343-1(a)(2). That provision prohibits a state from establishing any requirement for the labeling of food that is required by 21 U.S.C. section 343(c), unless such requirement is identical to the federal requirement. Section 343(c) in turn, deems a food misbranded if it is an imitation of another food but does not identify itself as an imitation. Plaintiffs are not alleging that the pasta sauce is an imitation of some other food; rather, they allege that it is not "all natural" because it is made with high fructose corn syrup.

  B. *Plaintiffs' claims are not impliedly preempted.*

    *1. Field preemption*

Next, defendant argues that even if not expressly preempted, plaintiffs' claims are impliedly preempted because Congress intended the federal government to occupy the field of food and beverage labeling. This "intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the 'States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on that subject.'" English v. General Electric Co., 496 U.S. 72, 79 (1990) (citation omitted). Defendant urges the Court to find field preemption based on the FDA's enactment of a panoply of regulations governing the labeling of food and beverages. The Court is not persuaded.

    *a. The NLEA's preemption provisions suggest Congress did not intend to occupy the field of food and beverage labeling.*

4

1    Defendant's assertion that Congress intended to occupy the field of food and beverage
2 labeling is belied by the NLEA. That Act amended the FDCA to include an express
3 preemption provision that *allows* state regulations that are identical to federal law. 21 U.S.C.
4 § 343-1(a). Thus, the FDCA as amended by the NLEA contemplates state regulation and
5 enforcement along with federal regulation. Moreover, "an express definition of the pre-
6 emptive reach of a statute 'implies'– i.e., supports a reasonable inference – that Congress did
7 not intend to pre-empt other matters . . . ." Freightliner Corp. v. Myrick, 514 U.S. 280, 288
8 (1995).
9    Here, the intent not to impliedly preempt does not need to be inferred because the
10 preemption provisions added to the FDCA by the NLEA include an express savings clause
11 that disavows any implied preemption: "The [NLEA] shall not be construed to preempt any
12 provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-
13 1(a)]." Pub. L. No. 101-535, § 6(c)(1) (21 U.S.C. § 343-1 note). Thus, Congress has
14 explicitly stated that it *does not* intend to occupy the field of food and beverage nutritional
15 labeling; instead, it permits states to regulate subject matters covered by the NLEA and its
16 regulations provided that such state laws do not fall within the FDCA's express preemption
17 provisions. See In re Farm Raised Salmon Cases, 42 Cal.4th 1077, 1091 (2008) (holding that
18 with section 6(c)(1) "Congress made clear that the preemptive scope of section 343-1 was to
19 sweep no further than the plain language of the statute itself.").
20   Defendant responds that–although it argues (unsuccessfully) that plaintiffs' claims are
21 expressly preempted by the provisions added by the NLEA–its field preemption argument is
22 based solely on the FDCA "misbranding" regulations and which were not amended by the
23 NLEA. See 21 U.S.C. § 343(a). In other words, defendant contends that the savings clause
24 does not apply to FDCA provisions not amended by the NLEA and that its field preemption
25 argument is based solely on these unamended provisions. Even assuming the provisions
26 added by the NLEA are unrelated to plaintiffs' claims, and thus the savings clause does not
27 apply, the existence of a savings clause which explicitly disavows any implied preemption
28 with certain subject areas suggests that Congress did not intend to occupy the field of other

5

related subject areas. In other words, why would Congress explicitly intend not to preempt some state laws on food labeling (those covered by the NLEA amendment to the FDCA), but still intend to occupy the field with respect to other food labeling? Defendant offers no explanation for why Congress would draw such a distinction and does not cite any case in which a court found implied preemption under such circumstances.

Defendant suggests that the Court cannot consider the section 6(c)(1) savings clause in its implied preemption analysis because section 6(c)(3) provides that the NLEA's savings clause has no effect on a preemption analysis arising from FDCA provisions that were not adopted or amended by the NLEA. Section 6(c)(2) and 6(c)(3) read:

> (2) The amendment made by subsection (a) [21 U.S.C. § 343-1(a), the express preemption provisions] . . . shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food.
>
> (3) . . . paragraphs (1) and (2) of this subsection [NLEA section 6(c)] shall not be construed to affect preemption, express or implied, *of any such requirement* of a State or political subdivision, which may arise under . . . any provision of the Federal Food, Drug, and Cosmetic Act not amended by subsection (a).

Pub. L. No. 101-535, § 6(c)(2)(3) (21 U.S.C. § 343-1 note) (emphasis added). A fair reading of these subparagraphs is that the phrase "any such requirement" in section 6(c)(3) refers to the requirement in section 6(c)(2) – that is, "any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food." See In re Farm Raised Salmon Cases, 42 Cal. 4th at 1093. In other words, the NLEA–including the savings clause (no preemption unless the law is expressly preempted)-- shall not be construed to affect preemption of food safety laws. This lawsuit is not about food safety. Thus, NLEA section 6(c)(3) is consistent with the Court's view that Congress did not intend to preempt the entire field of food and beverage labeling.

In any event, there is a strong argument that plaintiffs' claims fall within the savings clause. As is discussed more fully below, when the FDA considered whether to adopt formal regulations defining the use of the term "natural" on food labels it did so pursuant to the NLEA amendments to the FDCA–not the FDCA provisions left untouched by the NLEA. See 58 F.R. 2302-1 (1993) ("This action is part of the food labeling initiative of the Secretary

of Health and Human Services (the Secretary) and in response to the Nutrition Labeling and Education Act of 1990 (the 1990 amendments)."). In other words, if the FDA were to adopt formal regulations defining the use of "natural" on a food label, it would do so pursuant to the NLEA–the very Act that unambiguously provides that there is no preemption of state laws except as expressly provided.

> *b.*     *The FDA's policy as to the word "natural" suggests an intent not to occupy the field of food labeling.*

The FDA's "policy" about the use of the word "natural" in a food label also suggests an intent *not to* occupy the field. Under the policy, "the agency has considered 'natural' to mean merely that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be there." 56 F.R. 60421-01 (1991). The fact that it is a "policy" means that the FDA treats it as an advisory opinion and will not "recommend legal action against a person or product" who complies with the policy. 21 C.F.R. § 10.85(d), (e). The policy, however, does not establish a legal requirement. Id. § 10.85(j) ("An advisory opinion may be used in administrative or court proceedings to illustrate acceptable and unacceptable procedures or standards, but not as a legal requirement.").

In 1991 the FDA solicited comments on a potential rule adopting a definition for "natural," noting that "use of the term 'natural' on the food label is of considerable interest to consumers and industry." 58 F.R. 2302-01 (1993). Two years later the FDA concluded:

> After reviewing and considering the comments, the agency continues to believe that if the term 'natural' is adequately defined, the ambiguity surrounding use of this term that results in misleading claims could be abated. However, as the comments reflect, there are many facets to this issue that the agency will have to carefully consider it if undertakes a rulemaking to define the term "natural." Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. The agency will maintain its current policy [as explained above].

58 F.R. 2302-01 (1993). Although the FDA acknowledges that consumers are being misled by the use of the term "natural," it has declined to adopt any regulations governing this term. This inaction is consistent with an intent not to occupy the field. This is especially so given

7

that at the time the FDA declined to formally define "natural" it was aware of and had reviewed state regulation of the use of the term, yet it made no mention of the need for uniformity or a preemptive federal regulation, see 56 F.R. 60421-01 (1991), 58 F.R. 2302-01 (1993); instead, it declined to take any action.

          *c. Holk and Fraker are neither binding nor persuasive.*

  The two district court cases upon which defendant relies do not persuade the Court that Congress intended to preempt the field of food and beverage labeling. In Holk v. Snapple Beverage Corp., 574 F.Supp.2d 447 (D. N.J. 2008), the district court considered the precise issue presented here. The plaintiff alleged that Snapple's use of the term "all natural" violated various New Jersey laws because Snapple contains high fructose corn syrup. The district court held that the claims were not expressly preempted by the NLEA, id. at 454, but were impliedly preempted by the FDCA. Id. at 455. The court reasoned that the FDA has the ability to enforce the FDCA and its "myriad" regulations and that the FDA is obligated to follow its informal policy on the use of the word "natural." Id. The court, however, did not consider how the FDCA preemption provisions added by the NLEA affect the implied preemption analysis. In Fraker v. KFC Corp., 2007 WL 1296571 (S.D. Cal. April 30, 2007), the court also did not discuss the effect of the FDCA preemption provisions. Id. at *4. Accordingly, the Court is not persuaded by these cases.

       *2. Conflict Preemption*

  Implied preemption also occurs where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or when compliance with both federal and state regulations is physically impossible. Chicanos Por la Causa, Inc, 544 F.3d at 982. Conflict preemption may exist even when there is an express preemption provision and the state law at issue is not expressly preempted. Id. at 985.

  Defendant has not proved as a matter of law that plaintiffs' claims, if successful, make compliance with federal law a physical impossibility. A manufacturer could comply, that is, not violate, the FDA's policy as to use of the term "natural" and still comply with state law as articulated by plaintiffs in this case. Nor does California law stand as an obstacle to the

accomplishment and execution of the objectives of the FDCA. There is no indication in the record that the FDA considered a more restrictive definition of natural and decided that the proper balance is struck with its current policy; to the contrary, the FDA has acknowledged that a more precise definition is needed but it is not a FDA priority.

## II.     Primary Jurisdiction

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch. Id. "[T]he court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling." Id. at 1115.

Application of the doctrine is not appropriate here. At a minimum, various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources. Moreover, this is not a technical area in which the FDA has greater technical expertise than the courts–every day courts decide whether conduct is misleading. Finally, in Clark, the plaintiff's claim was based on federal law and therefore referral to the agency would finally resolve the legal question before the Court. Here, in contrast, plaintiffs' claims are based on state law and, as the Court's analysis of implied preemption suggests, even if the FDA were to formally define "natural," federal law would not dispose of plaintiffs' state law claims.

## III.    Class Allegations

Finally, defendant seeks to strike the class allegations on the ground that a class cannot be certified as a matter of law. Specifically, defendant alleges that each class member must prove reliance on the "all natural" representation and therefore individual questions necessarily predominate.

9

1    If a misrepresentation is material an inference of class-wide reliance may be inferred.
2 Mass. Mut. Live Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1292 (Cal. App. 2002).
3 The Court cannot determine on the pleadings whether a class-wide inference is appropriate in
4 this case.  Accordingly, defendant's motion to strike the class allegations is denied without
5 prejudice to the Court considering the issue on a fully-briefed and supported motion
6 concerning class certification.

## CONCLUSION

For the reasons explained above, defendant's motion to dismiss and strike is DENIED.

**IT IS SO ORDERED.**

Dated: Feb. 3, 2009

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE